Ex parte Samuel **WALKER,**
**Jr.,** Applicant.

No. **70710.**

Court of Criminal Appeals of Texas,
En Banc.

Sept. 27, 1989.

Andrew L. Jefferson, Jr., Houston, for applicant.

·John B. Holmes, Jr., Dist. Atty., Deborah S. Bacheller, Asst. Dist. Atty., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DUNCAN, Judge.

This is an application for post-conviction writ of habeas corpus brought pursuant to Article 11.07, V.A.C.C.P. This Court ordered this cause filed and set for submission on November 16, 1988.

The jury found applicant guilty of the offense of aggravated robbery, and assessed his punishment at 45 years in the Texas Department of Corrections. In his writ, the applicant asserts a number of allegations to support a claim that he was rendered ineffective assistance of counsel at the pretrial, trial, and punishment stages of his prosecution. The findings of fact and conclusions of law made by the trial court, after a hearing on applicant's writ, urge that relief be granted. After reviewing the record of both the applicant's trial and the writ hearing we find that the trial court's findings and recommendation regarding the punishment stage of the trial are adequately supported by the record and are thereby adopted.

### I.

Because the applicant's request for relief is based upon allegations of ineffective assistance of counsel during his jury trial it is necessary that the facts of the offense be identified. The State presented evidence that on December 3, 1981, the applicant and another man entered a Burger King restaurant after it had closed by climbing through the drive-in window. After they got into the restaurant they placed several of the employees and a customer into a walk-in cooler. Two other employees, avoiding detection, secreted themselves in the men's restroom. While this was occurring, the applicant approached the manager of the Burger King, placed a gun to his head, and ordered him to open the safe. After the manager opened the safe he was placed in the cooler with the others. The State's witnesses then testified that while they were in the cooler they heard the applicant and the other man let another person into the restaurant through the back door. After the men left the restaurant the people in the cooler and the restroom came out and called the police.

While on patrol a Bellaire Police Department Sergeant received information from a taxicab driver that there were three suspicious men at a nearby convenience store. The police officer went to the convenience store and while detaining one of the men noticed another man trying to hide behind a car. The man behind the car, obviously seeing the policeman, dropped a paper bag and ran. The Sergeant called for backup help, left the man at the convenience store in the custody of another taxicab driver and pursued the running man. As he began chasing the man he noticed that the bag that was dropped contained cash money.

When the backup police officer arrived he found the bag of cash and took the other man into custody. In addition, he was told that there was a man inside the store (applicant) who had been with the men outside so he took him into custody also. The Sergeant shortly returned without catching the man that had run.

By this time the Bellaire police knew that a nearby Houston Burger King had been recently robbed. Consequently, they turned the cash, the applicant and the other man over to the Houston police.

During the applicant's trial, in addition to the testimony of several police officers, the State presented the testimony of those people that were placed in the cooler: the Burger King's manager, two of his employees, and the customer. The police officers testified about the events leading up to the applicant's arrest inside the convenience store and his being identified by the witnesses at a lineup. Each of the other witnesses positively identified the applicant as one of the individuals who entered the Burger King, armed with a pistol, and robbed it. Despite an aggressive cross-examination, each of the witnesses maintained their identification of the applicant. In addition, each testified that shortly after the robbery they identified the applicant at

a lineup conducted by representatives of the Houston Police Department.

After the jury returned its guilty verdict, the State presented a judgment and sentence showing that the applicant had been assessed eight years in the penitentiary for aggravated robbery less than a month before he committed this offense. The applicant presented no evidence at the punishment stage of the trial. The jury assessed the applicant's punishment at forty-five years in the penitentiary.

## II.

By way of background, the record reflects that trial counsel and the applicant are maternal cousins. After the applicant was arrested, his parents visited counsel in her home, whereupon she undertook a limited agreement to represent the applicant regarding the trial which is the subject of this writ. According to applicant's counsel's affidavit, the limited agreement to represent the applicant encompassed only pretrial appearances. Counsel also claimed that she obtained assurances from applicant's parents that they would hire a more experienced attorney to represent him at trial. On the date the trial commenced, June 1, 1982, it was counsel's understanding that applicant would accept the fifteen year plea bargain offered by the State. However, the applicant refused to accept the State's offer, choosing instead to hold out for a lower offer. A proposal for less than the fifteen years previously offered by the State was not forthcoming, and applicant's counsel was unexpectedly compelled to proceed with trial.

An exhaustive recitation of the particulars of the testimony and circumstances surrounding counsel's alleged deficiencies at the various phases of the applicant's trial would only serve to obscure the issues relevant to this writ. The findings of fact made by the trial court after a hearing, may be paraphrased as follows:

### PreTrial and Guilt–Innocence

(1) Counsel was aware that the case was set for trial some three months in advance; yet failed to inform trial court of her agreement with applicant's parents of her limited representation or that she was not prepared for trial.

(2) Counsel had access to the State's file, which she read and took extensive notes from; yet she conducted only a perfunctory investigation, limited to conversations with the applicant and several witnesses prior to trial.

(3) Counsel never visited the scene of the robbery, only to discover at trial that a familiarity with the layout of the site was critical to rebut the State's evidence as to the means of entry during the offense.

(4) Counsel also undertook to represent applicant on appeal from a plea of guilty to aggravated robbery in another case wherein applicant received eight years confinement as punishment. The conviction arising from this prior offense occurred some fourteen days before the commission of the instant offense. While counsel filed a notice of appeal for the prior conviction, she admitted that the notice was filed four days late. In spite of the tardiness of counsel's filing of notice of appeal, she erroneously assumed that, since an appeal was "pending," the prior conviction could not be admitted in the instant trial.

(5) Counsel failed to file pretrial motions or secure a ruling from the court as to the admissibility of the prior conviction.

(6) Counsel, by her own line of questioning, elicited testimony that applicant had been identified by other witnesses as a suspect in another robbery. Counsel's justification for doing so was her belief that those witnesses misidentified her client. During her efforts to show misidentification, the extraneous offenses were admitted.

(7) Counsel failed to object on two occasions to improper hearsay.

### Punishment

(1) At the punishment stage, counsel opened the door by allowing the State to comment on applicant's failure to testify,

and then failed to object or to ask for an instruction to disregard.

(2) At the punishment phase, the State introduced the prior conviction, which was arguably being appealed, absent objection from applicant's counsel.

## III.

The proper standard by which to gauge the adequacy of representation by counsel at the guilt-innocence stage was articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted in Texas in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Cr.App.1986). The test set forth in *Strickland*, simply stated, requires a two-pronged analysis: (1) Did the attorney's performance fail to constitute "reasonably effective assistance," i.e., did the defense attorney's representation fall below an objective standard of reasonableness under prevailing professional norms, and (2) if so, was there a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different? A "reasonable probability" was defined by the Supreme Court as "a probability sufficient to undermine confidence in the outcome." *Strickland*, supra, 466 U.S. at 694, 104 S.Ct. at 2068.

As in the case before us, *Hernandez* involved a claim of ineffective assistance of counsel at the guilt-innocence stage. That decision arose out of the applicant's petition for discretionary review following his conviction for capital murder and sentence of life imprisonment. In *Hernandez*, the appellant contended that his trial counsel rendered ineffective assistance for three reasons: failure to pursue an insanity defense; presentation of evidence that rebutted the defense of self-defense; and ignorance of the facts of the case and governing law. *Id.*, at 57. Judge Tom Davis concluded:

It is obvious from a review of the entire record that in certain respects trial counsel rendered sub-par assistance. But in the particular instances where this occurred, it has not been shown, as required by *Strickland*, that there is a reasonable probability or a probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have differed had trial counsel's assistance been effective.

*Id.*, at 59.

While the appellant in *Hernandez* met the first prong of *Strickland* by demonstrating that counsel's performance was unreasonably deficient, the applicant failed under the second element—he was unable to show to the court's satisfaction that this ineffective assistance altered the outcome of the proceeding.

Application of the *Strickland* analysis to specific facts is at best problematical. By placing the determinative emphasis of the test on what "would have been," it requires us to play a speculative game with a retrospective focus. Trial tactics and case development bear the unique imprint of the attorney involved; no two lawyers would pursue their investigation and discovery in precisely the same manner. Members of the legal profession are rarely accused of possessing an eagle's clarity of vision in foresight, much less in hindsight; thus it is impossible to determine with ironclad certainty whether the result "would have been" different if counsel's performance were "reasonably effective." Whatever its faults, however, we are bound to apply the prejudice prong of *Strickland* to the guilt-innocence stage of the instant case.

■ In our view, the applicant was able to show the first prong of *Strickland* to our satisfaction: deficient performance on the part of counsel. Relative to the guilt-innocence stage of the trial, however, we conclude, contrary to findings of the trial court, in light of the overwhelming evidence of applicant's guilt, and recognizing the magnitude of trial counsel's errors, there is no reasonable probability that the result of the applicant's trial would have been different.

■ Trial counsel's deficient performance as it impacted on the punishment stage of the trial, however, is an entirely different matter. In *Ex Parte Cruz*, 739 S.W.2d 53 (Tex.Cr.App.1987), we held that

the second prong of *Strickland* is not applicable to the punishment stage of a trial. Instead, the Court agreed that the standard set forth in *Ex Parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980), would be the standard on which the effectiveness of counsel would be judged. That is, "the sufficiency of an attorney's assistance is gauged by the totality of the representation of the accused." *Ex Parte Cruz*, supra, at 58.

When reviewing the trial counsel's representation under *Duffy*, applicable only to the punishment stage of the trial, *Ex Parte Cruz*, supra, it is nevertheless necessary to examine the "totality of the representation," *id.*, which necessarily includes the pre-trial representation of the applicant, the guilt-innocence stage of the trial and the punishment stage of the trial. The hearing on the applicant's application for writ of habeas corpus contains an almost inexhaustible supply of examples of obvious errors that could be made by one representing a defendant in a criminal case.

The record from the writ of habeas corpus hearing reflects that when the applicant's attorney was retained to represent him in the Burger King robbery she was aware that he had recently been convicted and given an eight year sentence for a previous robbery. The applicant's attorney testified at the writ hearing that she advised the applicant that if the prior conviction was on appeal then it could not be admitted for either impeachment or during the punishment stage of the trial. She also testified that she had filed a notice of appeal in that case but had done nothing on it "because it was not my job to continue to work on the appeal as well as the aggravated robbery offense." She also conceded that she filed the notice of appeal four days late. Despite her being aware that a previous conviction existed that may have been admissible during the applicant's trial, the attorney conceded that she did nothing to prevent its admission.

Consequently, when the applicant's trial began he was under the impression that his prior conviction could not be admitted into evidence for any purpose whatsoever.

An example of trial counsel's deficient performance during trial manifests itself in her almost continuous solicitation of hearsay testimony during her cross-examination of two police officers. First, she asked one of the arresting officers, "When you arrived at the scene how did you know Samuel Walker was part of the three suspicious suspects?" Responding, the officer testified a cab driver told him that another suspect in the robbery had told him that the "big guy inside [applicant]" was with him.

This implicit request for hearsay statements was followed by her calling the same officer as her witness and asked him whether the other suspect had told him anything before the applicant was arrested. The officer gladly responded: "Yes, ma'am. As I indicated—yes, he indicated that the man inside was with him and that he had a gun." Then counsel testified for the officer when she declared that after the applicant was arrested and they had gone outside the store "[L]eonard [the other suspect] told you, 'Yes that's the one that was with me.'" The officer agreed that is what the other suspect said.

Applicant's trial counsel then moved from the solicitation of hearsay to the solicitation of extraneous offenses. In cross-examining the officer that conducted the lineup where the applicant was identified, she asked the identity of a person apparently named in the police report. The police officer stated: "He was a complainant in another case." Apparently unaware of the damaging and otherwise inadmissible nature of that statement, she asked about the identity of still another person. She got this answer: "He was also a complainant in another case."

She then had admitted into evidence a copy of the lineup sheet which showed that the applicant had been identified by five witnesses and tentatively identified by two other witnesses in unrelated offenses. Following this remarkable display of incompetence, counsel then told the court and obviously the jury that she would resume questioning the witness "about these two extra parties that were at the lineup."

First stating the identification witnesses' names, counsel then asked, "From what other complaining case were they from?" The officer stated he did not know. Counsel again emphasized, "But their case was totally a different case from the Burger King case?" The officer answered: "Totally different from what's going on in the trial."

So, during the guilt-innocence stage of the trial the jury received evidence that the applicant, if not guilty of other offenses, was at the very least a viable suspect in two other aggravated robberies. The jury was invited to consider this evidence when the jury instructions told them: "You are instructed that in fixing the defendant's punishment ... you may take into consideration all of the facts shown by the evidence admitted before you in the full trial of this case...."

Consequently, when the jury assessed the applicant's punishment they possessed information that, including the prior aggravated robbery conviction, the defendant was responsible for a total of three other aggravated robberies. What is remarkable is that except for his lawyer's deficient representation none of these extraneous offenses would have been admissible.

It would unduly lengthen this opinion to continue giving examples of trial counsel's prosecutorially focused cross-examination of the State's witnesses. It is quite sufficient to note that things did not improve.

A final example of trial counsel's incompetence is her cross-examination of one of the Burger King employees. The witness testified that the Burger King manager had told him that the applicant had worked for him and then she stated: "Did he tell you that some of these *other robbers* worked for him, too?" It is unnecessary to elaborate upon that comment.

As previously noted, *Duffy* requires us to review trial counsel's representation and determine whether it was sufficient based on the totality of the representation. It is our opinion that the representation of the applicant during the trial, as it impacted the punishment stage of the trial was not "reasonably effective." For example, although the attorney knew of the existence of a prior conviction, she did nothing to prevent it from being admitted into evidence. Further, her cross-examination of the State's witnesses brought out hearsay evidence regarding the applicant's involvement in the offense that could have adversely affected the applicant during the punishment stage of the trial. In addition, as previously noted, the erroneous solicitation of the extraneous offenses during the cross-examination of the police officer about the line-up identification is obviously contrary to effective representation. This testimony would have obviously not been admissible if solicited by the State during either the guilt-innocence stage of the trial or during the punishment stage of the trial. *Murphy v. State*, 777 S.W.2d 44 (Tex.Cr. App.1989). Of equal consequence is the failure of defense counsel to make any effort to prevent the appellant's prior conviction from being admitted. This, as much as anything else, was a blatant example of counsel's deficient performance.

Another practical significance of this error was, as the trial court observed, the failure of the applicant to have this information prior to trial could have contributed to his decision to refuse the State's plea bargain offer and proceed to trial. In *Ex Parte Wilson*, 724 S.W.2d 72 (Tex.Cr.App. 1987), we held that the failure of an attorney to inform a client of the State's plea bargain offer constituted error and fell below an objective standard of reasonableness. A similar observation is applicable to a situation where a client is given a plea bargain offer but is not apprised of the law applicable to his case. In this instance, the prior conviction was admitted solely because of trial counsel's dilatory conduct.

Since we find that the applicant met his burden under *Duffy* with regard to errors committed during the punishment phase, the applicant's punishment and sentence is set aside and he is remanded to the custody of the Harris County Sheriff's Department to answer the indictment in Cause No. 346,-084.