CV4-492.jnt 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00492-CV







In the Matter of J.N.T., Appellant







FROM THE COUNTY COURT AT LAW OF CALDWELL COUNTY


NO. 544-93CC, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING







PER CURIAM



 J.N.T., a fourteen-year-old boy, was adjudicated a delinquent child following jury
findings that he committed aggravated sexual assault, attempted aggravated sexual assault, and
indecency with a child. (1) He committed all of these offenses on or about June 16, 1993 with the
same five-year-old victim. The court committed J.N.T. to the Texas Youth Commission until his
twenty-first birthday. J.N.T. raises six points of error against the judgment. We will affirm the
judgment of the trial court.

 The incidents occurred one summer day near the house in which J.N.T. lived with
his grandfather, J.L. The victim lived on the property adjacent to J.L.'s house with
her grandmother, Flora, J.L.'s daughter-in-law. (2) On the day of the offense, Flora took the victim
to J.L.'s house and left her there. 

 Later that afternoon, the victim returned to Flora's house visibly upset. Flora
testified that, when she started to undress the victim, the victim told her that J.N.T. had "put his
privacy in her private." Flora said the victim told her that J.N.T. "wanted to put it in my mouth." 
Flora testified that the victim was covered with dirt and grass and that the victim's vagina and
anus were red. Flora said that the victim led her to an area at J.L.'s house behind a barn where
the victim said the incident occurred. Flora testified that she could tell the spot on the ground
where they had lain. She took the victim to a hospital in San Marcos where she was examined
by Dr. Jennifer Driskell.

 The trial court adjudicated J.N.T. a delinquent child after a jury found that he had
committed aggravated sexual assault, attempted aggravated sexual assault, and indecency with a
child. The court committed him to the TYC at the disposition hearing.

 By his first point of error, J.N.T. contends that his counsel was ineffective by
failing to renew an objection and preserve error as to hearsay testimony by Dr. Driskell. J.N.T.'s
counsel objected that Dr. Driskell was responding to the State's questioning with hearsay
statements of the victim. The court overruled that objection and told counsel that he would have
to renew his objections. Three questions later, the State asked Driskell if the victim had told her
what touched the victim's genitals. Driskell responded, without objection, "Yes, sir. She stated
that her cousin had rubbed his privates -- were her words -- against her there."

 Though a juvenile proceeding is a civil action, we will judge the effectiveness of
counsel by a criminal standard because a juvenile facing a loss of liberty requires the same access
to representation as an adult defendant. In re Gault, 387 U.S. 1, 36, 18 L.Ed. 527, 551 (1967). 
We must examine whether the conduct of appellant's counsel failed to meet an objective standard
for reasonable performance and whether that failure deprived the appellant of a fair trial. 
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Ex parte Walker, 777
S.W.2d 427, 430 (Tex. Crim. App. 1989). Counsel is allowed wide latitude within reasonable
professional standards to make tactical decisions. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. 
We look at the totality of the representation. Ex parte Carillo, 687 S.W.2d 320, 324 (Tex. Crim.
App. 1985); Vasquez v. State, 819 S.W.2d 932, 938 (Tex. App.--Corpus Christi 1991, pet. ref'd). 
Isolated failures to object do not equal ineffective assistance of counsel, and the representation
need not be error-free. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984); Vasquez,
819 S.W.2d at 938. The second prong of the test requires that the defendant show a reasonable
probability that, but for counsel's errors, the result of the proceedings would have been different. 
Vasquez, 819 S.W.2d at 938.

 J.N.T.'s point fails on both prongs of the Strickland test. The doctor's testimony
was admissible under the hearsay exception for statements made for purposes of medical
diagnosis. Tex. R. Civ. Evid. 803(4); see Tissier v. State, 792 S.W.2d 120, 125 (Tex.
App.--Houston [1st Dist.] 1990, pet. ref'd) (child abuse victim's statements to doctor are
admissible, particularly where abuser is in household); see also Macias v. State, 776 S.W.2d 256,
259 (Tex. App.--San Antonio 1989, no pet.). (3) The court thus correctly overruled the initial
objection; repeated objection would have been futile. The failure to object was reasonable. Even
if the court's ruling were incorrect and the failure to object unreasonable, objections would not
have changed the result. Driskell's testimony about the victim's identification of J.N.T. and his
actions was cumulative of Flora's testimony regarding the victim's identification of J.N.T., the
propriety of the admission of which J.N.T. does not challenge. We overrule point one.

 By point two, J.N.T. complains of the court's overruling his objection to the
testimony of Deputy David Brent. Over J.N.T.'s hearsay objection, Brent testified that the victim
told him that J.N.T. was the person who had molested her. Because the victim testified at trial,
this statement is not hearsay because "[a] statement is not hearsay if . . . [t]he declarant testifies
at the trial or hearing and is subject to cross-examination concerning the statement, and the
statement is . . . one of identification of a person made after perceiving him." Tex. R. Civ. Evid.
801(e)(1)(C). Brent's disputed testimony was also cumulative of Flora's testimony regarding
identification. We overrule point two.

 By point three, J.N.T. contends that he was deprived of a fair trial because of
Brent's misconduct during the trial. The witnesses had been placed under the rule prohibiting
witnesses from discussing the case with any person other than the attorneys in the case. Tex. R.
Civ. P. 267. J.N.T. contends that Brent communicated with a juror during a break in the
adjudication hearing. After the hearing was over, J.N.T.'s attorney learned that, on the second
day of the hearing, potential witness Carolyn Ford saw Brent talking in the county courthouse
hallway about eight feet from one juror and within twenty-five feet of two other jurors. The
nearest juror was looking directly at Brent. Ford assumed the people were jurors because they
went in and out of the jury room. She said she heard Brent say J.L.'s surname, though she did
not know what else he said. (4) J.N.T. submitted Ford's affidavit swearing to these assertions in
support of his motion for new trial. She testified at the hearing on the motion for new trial, as
did Brent. Brent denied talking with jurors during the adjudication proceeding except during his
testimony.

 It is unclear whether J.N.T. asserts that these facts show witness or jury
misconduct. He asserted jury misconduct in his motion for new trial, witness misconduct in his
point of error, and both in the discussion in his brief. We will address both.

 To establish witness misconduct, the appellant must show invocation and violation
of the rule barring witnesses from discussing the case among themselves and with others who are
not their attorneys. Parham v. Wilbon, 746 S.W.2d 347, 348 (Tex. App.--Fort Worth 1988, no
writ); see Tex. R. Civ. P. 267; see also Tex. R. Civ. Evid. 614. The rule's intent is "to aid in
the ascertainment of truth by preventing the testimony of one witness from influencing the
testimony of another." Id. at 348-49. The witness or other person violating the order may be
punished for contempt and barred from testifying. Id. We may overturn the court's decision only
for abuse of discretion. Id. at 349. An abuse of discretion occurs whenever a trial court acts
unreasonably, arbitrarily, or without reference to guiding rules and principles. Beaumont Bank,
N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986).

 The court could not have barred Brent from testifying because it did not learn of
the purported conversation until after the adjudication. More important, Brent denied that he
made the statements attributed to him. Finally, there was no showing that the conversation altered
anyone's testimony. We hold that the court did not abuse its discretion by not granting a new trial
for witness misconduct.

 To establish jury misconduct, the appellant must show that material misconduct
occurred which, based on the record as a whole, probably resulted in harm. Tex. R. Civ. P.
327(a); Redinger v. Living, Inc., 689 S.W.2d 415, 419 (Tex. 1985); Ramsey v. Lucky Stores, Inc.,
853 S.W.2d 623, 635 (Tex. App.--Houston [1st Dist.] 1993, writ denied). The record must
indicate that the misconduct caused a juror to change a vote on an issue vital to the judgment. 
Redinger, 689 S.W.2d at 419. The record in this case is devoid of evidence that the conversation,
if it occurred, affected any part of the jury's decision. We overrule point three.

 By point of error four, J.N.T. contends that his counsel was ineffective for failure
to object to other juror misconduct during the adjudication proceedings. He complains that a juror
slept through large portions of the adjudication. J.N.T. supported this claim in his motion for
new trial with affidavits from his trial counsel and his trial counsel's legal assistant. Trial counsel
swore that a juror often appeared to be sleeping. She had her eyes completely closed most of the
times he looked at her, though a few times her eyelids were heavy and moving to a closed
position. His legal assistant averred that the juror slept through seventy-five percent of the
testimony. 

 The parties elicited contradictory testimony at the hearing on the motion for new
trial. Both affiants testified similarly to their affidavits. Though both conceded they could not
be absolutely certain she slept, they were confident she had. The attorney said that he at first gave
her the benefit of the doubt that she was concentrating with her eyes closed. The duration of the
closed periods led him to believe that she was sleeping. He did not notify the court for fear of
alienating the juror and the rest of the jury. The juror herself denied at the hearing on the motion
for new trial that she fell asleep. She said she kept her eyes to the floor often because she was
embarrassed and disturbed by the nature of the testimony.

 We cannot say that the attorney was ineffective for failing to object. The testimony
regarding whether the juror slept at all was contradictory. J.N.T.'s attorney made a conscious,
strategic decision not to risk alienating the jury by objecting. No evidence showed that the result
would have changed had his attorney objected or the juror not slept. We overrule point four.

 J.N.T. contends by point five that the preceding errors combined to deny him
effective assistance of counsel. Because we have found no error, we disagree. J.N.T. has not
shown that, but for his counsel's mistakes, he would not have been adjudicated a delinquent. We
overrule point five.

 By point six, J.N.T. contends that the court erred by committing him to the TYC. 
He argues that the evidence does not support the disposition and that less restrictive alternatives
existed.

 The trial court must give specific reasons for the disposition of a juvenile. Tex.
Fam. Code Ann. § 54.04 (West Supp. 1995); In re A.G.G., 860 S.W.2d 160, 162 (Tex.
App.--Dallas 1993, no writ). We review the record to see if it supports the findings. In re L.G.,
728 S.W.2d 939, 944-45 (Tex. App.--Austin 1987, writ ref'd n.r.e.). We may reverse for an
abuse of discretion, such as occurs if the record does not support the findings. Id. at 946; see also
In re J.D., 773 S.W.2d 604, 606 (Tex. App.--Texarkana 1989, writ dism'd w.o.j.).

 Here, the trial court found the child's best interest served by commitment to TYC
because:



1. The offenses, which form the basis for the finding of delinquent conduct, are
serious and involve felony conduct as defined by the Texas Penal Code;


2. It is in the child's best interest to be placed outside his home;


3. Reasonable efforts were made to prevent or eliminate the need for the child's
removal from the home and to make it possible for the child to return to his
home;


4. The child, in the child's home, cannot be provided the quality of care and
level of support and supervision that the child needs to meet the condition of
probation;


5. Placement outside the home was not available due to the delinquent conduct;


6. There is no facility available through the Juvenile Probation Department of
Caldwell County, Texas, to provide the child with a more structured
environment to assure his emotional progress;


7. The child has a history of unlawful conduct and has been referred to the
Juvenile Probation Department of Caldwell County, Texas, on numerous
occasions.



Except to contend that a less restrictive environment was available, the petitioner does not argue
that these findings are insufficient to justify commitment to TYC. 

 J.N.T.'s offenses are indisputably serious and involve violations of the penal code.

 Jill Townsend, chief of the juvenile probation department of Caldwell County and
J.N.T.'s supervising officer, testified at his disposition hearing. She opined that J.N.T.'s lack
of prior adjudications and the support of his family worked in his favor. She felt that the
seriousness of his offense, his prior referrals to her department, his poor school attendance
history, his denial of responsibility for his actions, and his poor attitude toward conditions of
release worked against him. She testified that, though one of the conditions of probation was that
he attend school and violate no laws, he refused to attend school. He took a box cutter--a device
with a razor concealed by a slide used to open boxes--to school knowing that he would be
suspended if caught. His mother requested that he be removed from the home for his refusal to
attend school. He also threatened a family member with a knife. Townsend agreed that, aside
from these failures, J.N.T. had complied with his other rules of release. 

 Townsend said that these behaviors indicated that J.N.T. lacked sufficient control,
both within himself and at home, to complete probation successfully. She admitted that she had
not visited his home or seen his mother encourage inappropriate behavior, but made this judgment
based on objective evaluation of his behavior during his release. Townsend felt that, since he was
unlikely to complete probation successfully, he should be removed from his home. 

 Townsend advocated commitment to TYC instead of a residential placement
because of his history of assaultive and threatening behavior. She feared that J.N.T. might pose
a risk to public safety in a residential placement because such facilities have less security than
TYC. (5) She said that the security of TYC would avert recurrence of either of his assaultive
behaviors. She also believed that he would immediately be placed into a treatment program for
sex offenders to avert recurrence.

 J.N.T.'s mother testified that he generally followed her direction. She also talked
about the exceptions. She said that J.N.T. intentionally got himself suspended from school only
because he felt that the other students were looking down on him; he had since been studying for
his Graduate Equivalency Degree. She explained that he pulled a knife on his brother only
because his brother was beating him up. She said that he had been improving his behavior and
talking out his difficulties. She believed that J.N.T. could successfully complete probation and
that she was prepared to do whatever she had to do to make sure he did. She said he had
consistently denied involvement in the offense. She stated that Flora lied constantly and always
had an inexplicable vendetta against the mother's family since marrying the mother's brother.

 Though the evidence is conflicting, enough supports the court's findings. Though
less restrictive alternatives may have existed, sufficient evidence indicated that those placements
were not appropriate for J.N.T. or society in general. We cannot say that the court abused its
discretion. We overrule point six.

 We affirm the judgment of the trial court.


Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: July 12, 1995

Do Not Publish
1. J.N.T.'s conduct violated three statutes that have since been amended. Act of May 25,
1981, 67th Leg., R.S., ch. 202 § 3, 1981 Tex. Gen. Laws 472 (Tex. Penal Code Ann. §
21.11, since amended) (indecency with a child); Act of June 16, 1991, 72d Leg., R.S., ch.
662, § 1, 1991 Tex. Gen. Laws 2412 (Tex. Penal Code § 22.011, since amended) (sexual
assault); Act of August 3, 1987, 70th Leg., 2d C.S., ch. 16, § 1, 1987 Tex. Gen. Laws 80
(Tex. Penal Code Ann. § 22.021, since amended) (aggravated sexual assault).
2. Flora is J.N.T.'s aunt. J.L. is the victim's great-grandfather.
3. Both of these cases interpret the criminal rule of evidence 803(4). These interpretations
apply here because the wording of civil and criminal evidence rules 803(4) is identical to each
other and to the federal rule of evidence 803(4).
4. The name spoken is the surname of J.L., Flora, and the victim and was J.N.T.'s
mother's unmarried name.
5. She noted that her department could not financially support a residential placement. 
Though J.N.T. attacks this as an inappropriate consideration, the court did not state this as a
basis for its decision.