TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00462-CR






James Johnson, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0954916, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING






 A jury convicted appellant James Johnson of burglary of a habitation and aggravated
assault. The jury assessed punishment at sixteen and fourteen years' imprisonment, respectively, for the
offenses. On appeal, appellant contends that the evidence is legally and factually insufficient to support his
convictions, that the trial court should have suppressed the in-court identification of him, and that his
representation at trial was ineffective. We will affirm the convictions.

 We begin with a survey of the facts, reserving a more detailed recitation for the sufficiency
points. A noisy group of men banged on the front door of Levern Green's residence, looking for the
person who had stabbed "David," a friend or relative of the members of the group. Believing their quarry
was in the house, they forced their way into the house, hit Green, and briefly held him at knifepoint. When
the police arrived, the intruders scattered. Shortly thereafter, appellant appeared in front of the Greens'
house and was arrested for public intoxication. While appellant sat handcuffed in a police cruiser, Green
identified him as the man who held him at knifepoint.


Identification


 Appellant contends in his third point of error that the trial court erred by not suppressing
the in-court identification of him because the out-of-court identification occurred under impermissibly
suggestive circumstances. After a pretrial hearing, the trial court denied appellant's motion to suppress. 
We must review out-of-court identification procedures to see if they are impermissibly suggestive and
whether any suggestiveness created a very substantial likelihood of irreparable misidentification. Delk v.
State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993). In conducting the latter analysis, we consider the
following regarding the out-of-court identification: (1) the opportunity of the witness to view the criminal
at the time of the crime; (2) the witness's degree of attention during the crime; (3) the accuracy of the
witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the
confrontation; and (5) the length of time between the crime and the confrontation. Manson v. Braithwaite,
432 U.S. 98, 114 (1977); Delk, 855 S.W.2d at 706. The in-court identification testimony is admissible
if the indicia of reliability outweigh the apparent corrupting effect of the unnecessarily suggestive pretrial,
out-of-court occurrence. Id. The defendant must show by clear and convincing evidence that the out-of-court events made the in-court identification unreliable. Id.

 Appellant contends the out-of-court identification in the present case was impermissibly
suggestive because it occurred while he was handcuffed in a police cruiser outside Green's home. We note
that Green testified he identified appellant before appellant was arrested. However, Jeff Gabler, the
arresting officer, testified that he had already arrested appellant for public intoxication when Green "broke
through the crowd and said, 'That's him. That's the guy who broke in the house and threatened me with
a knife.'" If, as Gabler testified, appellant was under arrest and isolated, that might have been suggestive. 
There is, however, no indication that the police suggested to Green that he consider whether appellant was
his assailant. To the contrary, Gabler's testimony indicates that the identification was unsolicited and
coincidental with the arrest. This is much less suggestive than the police showing a single photograph to
a witness, as criticized in Manson, 432 U.S. at 109.

 Even if the out-of-court identification was overly suggestive, the indicia of reliability
outweigh the suggestiveness. Green had ample opportunity to view his assailant at the scene. Green
testified that he saw the intruders before they came into his house and stayed for two to five minutes. He
testified that the assailant held him by the neck and menaced him with a knife for thirty to forty-five seconds. 
Green testified that he was focused on protecting his family. We conclude that he had sufficient time to
create a memory of his assailant's face because, given the life-threatening circumstances, Green was likely
paying very close attention. Green did not have an opportunity to describe the assailant to police, so close
in time was the attack to the identification. Despite the discrepancy in testimony regarding whether
appellant was under arrest when identified, both Green and the arresting officer agree that Green showed
no hesitation or doubt in identifying appellant as his attacker less than ten minutes after the attack. We
conclude that the trial court did not err by refusing to suppress the identification. We overrule point of error
three.


Sufficiency of the evidence



The applicable law

 By points of error one and two, appellant contends the evidence was legally and factually
insufficient to support his convictions. To determine the legal sufficiency of the evidence, we view all the
evidence in the light most favorable to the verdict and can set aside the verdict only if no rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 318-19 (1979). To assess the factual sufficiency of the evidence, we review all the
evidence without the prism of "in the light most favorable to the verdict" and can set aside the verdict only
if it is so contrary to the great weight of the evidence as to be clearly wrong and unjust. Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996).

 We measure the sufficiency of the evidence against the elements of the offense as described
by a hypothetical, correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
To prove burglary of a habitation, the State must show that appellant entered the Greens' house without
their effective consent and with the intent to commit a felony. See Tex. Penal Code Ann. § 30.02(a) (West
1994). To prove aggravated assault, the State must show that appellant intentionally or knowingly
threatened another with imminent bodily injury while using or exhibiting a deadly weapon. Tex. Penal Code
Ann. § 22.02 (West 1994).

The testimony

 There is evidence supporting two versions of how appellant came to be in front of the
Greens' house. Appellant, his common-law wife Patricia Bowser, and Bowser's niece Kimly Pete all said
appellant had nothing to do with the assault and was merely trying to find out what was going on. Levern
Green, his teenage son Dashua, and their neighbor Kathy Partridge said that appellant led the attack on the
Greens' house. Police officer Jeff Gabler testified appellant then returned to challenge the Greens further.

 Dashua testified that he and his friend, D.C., had had problems with stabbing- victim David
and David's friend Dwayne for two years. Hearing that Dwayne and David had "jumped" a friend of his,
D.C. ran off to retaliate. Dashua called the police. D.C. returned to the Greens' house after stabbing
David. Shortly thereafter, a group searching for the person who stabbed "my nephew" started banging on
the Greens' front door. Mrs. Green called the police. Dashua went upstairs and got his father; he said
there was no time to explain why the men were banging on the door. After a brief respite, Dashua saw and
heard appellant, dressed in a black mesh shirt, kicking the door. Green looked through the peephole. 
Dashua said his mother opened the door to look at who was beating on the door. The men outside rushed
through the door, knocking his father over the couch. Three men started hitting Green. Appellant grabbed
Green by the neck and drew a steak knife back in a threatening manner. Dashua knocked appellant away
from his father. Appellant came toward Dashua, continuing to ask for the person who stabbed his nephew. 
When someone announced that the police had arrived, the intruders scattered. Dashua testified that
appellant was intoxicated.

 Levern Green's testimony regarding his involvement in the altercation was in most respects
in line with Dashua's testimony. The only real difference was that he recalled opening the door partway
to talk to the visitors. He had no idea what D.C. had done or that he was in the house. He said one of the
outsiders looked through the partly opened door and said, "There he is," before pushing open the door. 
Green testified that he resisted the men's entry. Green agreed that the knife-wielding man was looking for
the person who stabbed his nephew, and Green was certain that the stabber was not himself, his wife, or
his son. Green said that his attacker said something like, "Who is fixing to get stabbed now?" as he waved
the knife.

 Neighbor Kathy Partridge told a similar story from her perspective. She said a group came
searching for someone at her house. She identified appellant as the man leading the searching group. After
she told them they had the wrong house, they went to the Greens'. When the Greens asked who was at
the door, appellant pushed open the door, went past Mrs. Green, and pushed Green over the couch. She
then saw appellant hitting Green, but she did not see a knife. She also saw him swing at Dashua.

 Officer Gabler testified that he was called to investigate a stabbing and arrived on a chaotic
scene. After five minutes near the Greens', he got a call about a drive-by shooting nearby; the call came
from appellant's house. He went to investigate but found nothing. He did not recall seeing or talking with
appellant. He returned to the Greens' street, where Dashua was complaining to another officer about
people having forced their way into the house. Green had a swollen, bleeding lip. Appellant arrived and
began challenging the people who lived in that area. The officer interviewing the Greens asked Gabler to
arrest appellant for public intoxication. Despite appellant's loud challenges, no one yet identified appellant
as the leader. After Gabler handcuffed appellant and as he was putting him in the car, Gabler heard
someone say something like "that is the guy." Green and Partridge then looked in the car and identified
appellant as the man who led the assault on the Greens' house. Gabler then added aggravated assault to
the public intoxication charge.

 Patricia Bowser, appellant's common-law wife, testified that David, the stabbing victim,
was her sister-in-law's stepson. David, who had been a guest at her barbecue earlier in the evening,
reappeared stabbed and bleeding. Upon learning of the stabbing, many of her guests ran around the corner
to investigate. Appellant did not leave with them, but did go five or ten minutes later. She testified that he
was wearing a black mesh shirt and lots of gold jewelry. She also testified that Mrs. Green testified at a
pretrial hearing that the knife-wielding assailant had on a white T-shirt.

 Kimly Pete, Bowser's niece, agreed with much of the previous testimony. She was part
of the group that left the party to look for the stabber. She confirmed the Greens' version of the events at
their house with one critical exception--she said that the person who assaulted the man inside the house
was someone named Bobby, not appellant. She did not recall Bobby having a knife. She said Bobby was
wearing a black shirt that was partially mesh and that the other assailant had on a white shirt. She also said
that Bobby did not look like appellant.

 Appellant also testified that sometime after the group rushed off, he went to see what was
happening. He met them on their way back. They told him the police had the situation under control. Then
a car drove by and the occupants threatened to commit a drive-by shooting at appellant's house. Appellant
called the police and accompanied an officer to the Greens' street in an unmarked car to identify the drive-by threateners. When he did so, the men jumped out of a car and threatened to hurt him. Another officer
arrested appellant for public intoxication. Appellant confirmed Bowser's and Pete's descriptions of his
clothing, and agreed that his jewelry selection that day was a "Mr. T starter set." He denied that he knew
Green, walked up to his house, went inside his house, had a knife, knocked Green over, or talked to him
or his family. He also denied that, immediately before his arrest, he stood on the corner yelling and
questioning when the police were going to stop gang violence.


The analysis

 The evidence is factually and legally sufficient to support the conviction for aggravated
assault. The jury could choose to credit the identification of appellant as the assailant over the alibi
testimony. The jury could then conclude that appellant's punching Green, waving a knife at him, and saying
"Who is fixing to be stabbed now?" constituted a threat of imminent bodily injury while using a deadly
weapon.

 Appellant contends that inconsistencies in testimony render the evidence insufficient to
prove the elements of burglary. The asserted inconsistencies, however, involve details irrelevant to the
offenses. For example, appellant contends Green waffled regarding whether he or his wife went downstairs
first. An additional inconsistency concerns which of them opened the door. We conclude that these
inconsistencies do not directly affect the proof of the elements. At most, they diminish credibility. We do
not reassess the jury's decision on credibility of witnesses.

 Aside from the identification dispute, appellant's insufficiency argument on the burglary
conviction focuses on whether appellant entered without consent and with intent to commit a felony. 
Appellant argues that, because the Greens opened the door partway and talked to appellant and his
cohorts, the State has failed to prove beyond a reasonable doubt a lack of tacit consent to entry. However,
the testimony from Green, Dashua, Partridge, and Pete that entry was resisted gave the jury ample evidence
to conclude otherwise. Appellant also emphasizes that Green knew the men were not after him or his
family. Green's knowledge is not dispositive of appellant's intent. The jury was free to infer from the
forceful entry following the spotting of D.C., the knife wielding, and the statement "Who's fixing to be
stabbed now?" that appellant was in a vengeful mood and entered the house intending at least to threaten
D.C. or others with imminent bodily injury. A threat with a knife would constitute an aggravated assault. 
Nonconsensual entry with intent to make that threat constitutes a burglary.

 When viewed in the light most favorable to the verdict, this record provides sufficient
evidence on which a rational jury could conclude beyond a reasonable doubt that appellant committed
burglary. Moreover, the verdict is not contrary to the great weight and preponderance of the evidence. 
We overrule points one and two.


Effectiveness of counsel


 By his fourth point of error, appellant contends his trial counsel was ineffective because he
failed to introduce into evidence a property receipt from the county jail to show that, when arrested,
appellant had a large gold medallion and chain but did not have a knife. To assess this point of error, we
first must examine whether counsel's conduct failed to meet an objective standard for reasonable
performance and whether that failure deprived the appellant of a fair trial. Strickland v. Washington, 466
U.S. 668, 687, (1984); Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). Counsel is
allowed wide latitude within reasonable professional standards to make tactical decisions. Strickland, 466
U.S. at 689. We look at the totality of the representation. Ex parte Carillo, 687 S.W.2d 320, 324 (Tex.
Crim. App. 1985); Vasquez v. State, 819 S.W.2d 932, 938 (Tex. App.--Corpus Christi 1991, pet.
ref'd). The representation need not be free of error. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim.
App. 1984); Vasquez, 819 S.W.2d at 938. Finally, the client must show a reasonable probability that, but
for counsel's errors, the result of the proceedings would have been different. Id.

 The trial-court record does not convince us that counsel's representation was ineffective. 
Initially we note that there is no evidence of the property receipt in the trial record. Second, we note that
Bowser and appellant both testified that appellant was wearing jewelry that night, and Bowser asserted that
"they gave the testimony that he had no jewelry on." At trial, however, none of the State's witnesses said
anything regarding whether appellant wore jewelry. Nevertheless, Bowser's statement put the alleged
deficiency in the identification testimony before the jury. The jury chose to ignore the alleged deficiency
and to credit the testimony of three people who saw the attacker at close range and identified him
unprompted by police questioning. 

 Similarly, the absence of a knife was before the jury because the arresting officer stated that
he found no knife on appellant at the time of arrest. The failure to offer the receipt showing no knife at
booking is not unreasonable because the jury already knew that appellant had no knife when arrested. The
jury convicted appellant anyway.

 Appellant does not assert any other flaws in counsel's representation. Counsel attempted
to suppress the identification, called and cross-examined witnesses, and objected to improper examination
techniques by the State.

 We conclude that the representation was not constitutionally deficient; further, we are not
persuaded that the result of the trial would have been different had the receipt been admitted. We overrule
point four.


Conclusion


 Having overruled all points of error, we affirm the convictions.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: March 26, 1998

Do Not Publish



vated assault. 
Nonconsensual entry with intent to make that threat constitutes a burglary.

 When viewed in the light most favorable to the verdict, this record provides sufficient
evidence on which a rational jury could conclude beyond a reasonable doubt that appellant committed
burglary. Moreover, the verdict is not contrary to the great weight and preponderance of the evidence. 
We overrule points one and two.


Effectiveness of counsel


 By his fourth point of error, appellant contends his trial counsel was ineffective because he
failed to introduce into evidence a property receipt from the county jail to show that, when arrested,
appellant had a large gold medallion and chain but did not have a knife. To assess this point of error, we
first must examine whether counsel's conduct failed to meet an objective standard for reasonable
performance and whether that failure deprived the appellant of a fair trial. Strickland v. Washington, 466
U.S. 668, 687, (1984); Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). Counsel is
allowed wide latitude within reasonable professional standards to make tactical decisions. Strickland, 466
U.S. at 689. We look at the totality of the representation. Ex parte Carillo, 687 S.W.2d 320, 324 (Tex.
Crim. App. 1985); Vasquez v. State, 819 S.W.2d 932, 938 (Tex. App.--Corpus Christi 1991, pet.
ref'd). The representation need not be free of error. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim.
App. 1984); Vasquez, 819 S.W.2d at 938. Finally, the client must show a reasonable probability that, but
for counsel's errors, the result of the proceedings