TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00195-CR






Jose Pablo Senteno, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 98-4966, HONORABLE BOB PERKINS, JUDGE PRESIDING







 After a trial to the court, the district court convicted Jose Pablo Senteno of
possession of a controlled substance and assessed sentence at eight years in prison. Senteno
challenges the legal and factual sufficiency of the evidence to support the judgment. He also
asserts that he was denied effective assistance of counsel. We will affirm the judgment.


BACKGROUND


 The testimony in this case came from Austin police officers and Senteno's sometime
girlfriend.

 Austin police officer Raul Ortegon testified that he learned from a confidential
informant that a man named Pablo was cutting up a large amount of crack cocaine in apartment
207 in London Square Apartments. He reported the information to the narcotics division and
Austin police officer Robert Hester. Ortegon then went to the apartment complex to speak to
Michael Barron and Jose Garcia about their possible involvement in a narcotics transaction. 
Ortegon had previously arrested Barron for possession of drug paraphernalia containing crack
cocaine, and arrested him this time on outstanding warrants. Ortegon searched Garcia's truck,
discovered a crack pipe, and arrested Garcia. 

 Another officer brought appellant over to Garcia's truck. Garcia told Ortegon that
appellant, his uncle, lived in apartment 207. At some point, appellant told officers they could
search the place, but then decided he did not want them to search it. Appellant denied living in
the apartment or anywhere in particular. The apartment manager, however, said that appellant
had been living in the apartment illegally. She said the woman who rented the apartment had
abandoned it several months before. The apartment manager let Ortegon into the apartment,
where he found a cookie of crack cocaine.

 Meanwhile, after receiving Ortegon's initial report, Officer Hester arranged to meet
Gabriella Nanos, appellant's girlfriend. Nanos had been giving Hester information. Appellant
brought Nanos to the meeting; other officers spoke with appellant. Hester said that Nanos told
him she had been living in apartment 207, though she was not the renter. She said that appellant,
too, was not the renter but was staying in the apartment.

 Hester said that the other officers told him appellant agreed to let them search the
apartment. When they got to the apartment complex, however, people there began talking to
appellant in Spanish. Hester did not understand what was said, but thereafter appellant withdrew
his agreement to let them search, saying that the apartment was not his.

 Hester said Nanos denied having a key. She told him she just left the door open. 
Neither Ortegon nor Hester recalled finding an apartment key on appellant. 

 Hester said the apartment manager wanted to check on the apartment because non-renters were using it. When the manager opened the door using her master key, Hester saw drug
paraphernalia on the coffee table; he found more between and under the sofa seat cushions. In
a bedroom, Hester found appellant's Mexican identification card and Travis County Probation
Department appointment slip. Hester also found a small amount of marihuana. He found letters
sent to Nanos and appellant at a different address; that was consistent with information that they
had recently moved to apartment 207. Boxes of belongings in the apartment comported with the
information that the move was recent. Hester did not check to see if the men's clothes found in
the apartment were appellant's size.

 Austin police officer Robert Bowers was working with Hester on the investigation. 
He testified that he had staked out the apartment complex when Hester set up the meeting with
Nanos. They saw Nanos and appellant leave the complex together (though they did not see from
which apartment they came). At the meeting site, while Hester talked to Nanos, Bowers talked
to appellant. Bowers said that Nanos told Hester that, though appellant had been dealing crack,
he was not at that time.

 Nanos testified that she had lived in apartment 207 for about two weeks following
her release from jail. She testified that as many as 20 people would stay in the apartment. She
described it as a flophouse, a crackhouse, and a place for homeless prostitutes to stay. She said
that appellant was not living there, but had visited her occasionally. At first she said that none
of his belongings were in the apartment, but then acknowledged that she still had some of his
things from when they lived together; this included his Mexican voter card, which she kept
because she liked the picture, and some of his jewelry that she liked to wear. She said he might
have contributed to the group payment of the utility bills. She said that she, not appellant, was
buying the big crack cookie from a man named Flaco. She said Pablo did not know she had the
cocaine.


DISCUSSION


 Senteno raises three points of error. He challenges the legal and factual sufficiency
of the evidence to support the conviction. He also contends that his trial counsel was ineffective.

 When reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the prosecution to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 318-19 (1979). When reviewing the factual sufficiency of the evidence, we view the
evidence in a balanced fashion and can set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922
S.W.2d 126, 135 (Tex. Crim. App. 1996). 

 In order to establish the unlawful possession of a controlled substance, the State
must prove (1) that the accused exercised care, control, and management over the contraband,
and, (2) that the accused knew the substance possessed was a controlled substance. Pierce v.
State, 577 S.W.2d 253, 254 (Tex. Crim. App. 1979). If, as in this case, the defendant did not
exclusively control the place where the contraband was found, additional facts and circumstances
must affirmatively link him to the contraband in a way that indicates he knew about the contraband
and exercised control over it. See Whitworth v. State, 808 S.W.2d 566, 569 (Tex. App.--Austin
1991, pet. ref'd) (compiling list of fourteen affirmative links). (1)

 Viewing the evidence in the light most favorable to the judgment, we find legally
sufficient evidence supports the conclusion that Senteno possessed the crack cocaine. The crack
cocaine and paraphernalia were in plain view in the apartment. Senteno was one of two chief
occupants of the apartment: his voter identification card was in a bedroom, and he felt entitled to
deny consent to the police search. Also, the informant said Senteno was cutting up the crack
cookie. Because legally sufficient evidence supports the judgment, we overrule point one.

 The only significant clash in testimony affecting the factual sufficiency of the
evidence centered on Senteno's control of the premises. There was testimony that several people
used the apartment and that Nanos left it unlocked because she had no key, thus showing a lack
of exclusive control. There was testimony that Senteno only visited the apartment and did not
have a key. Further, Nanos claimed that she was buying the cookie from another man. This
testimony is balanced by the testimony that Senteno lived in the apartment and had earlier that day
cut up one of the crack cookies. The factfinder was free to choose either version of the facts. 
Because factually sufficient evidence supports the judgment, we overrule point two.

 By his third point of error, Senteno contends that his trial counsel was ineffective. 
To evaluate this claim, we first must examine whether counsel's conduct failed to meet an
objective standard for reasonable performance and whether that failure deprived the appellant of
a fair trial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Ex
parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). There is a strong presumption that
counsel provided adequate assistance and made all the significant decisions in the exercise of
reasonable professional judgment. Strickland, 466 U.S. at 690. Counsel is allowed wide latitude
within reasonable professional standards to make tactical decisions. Id., 466 U.S. at 689. We
look at the totality of the representation. Ex parte Carillo, 687 S.W.2d 320, 324 (Tex. Crim.
App. 1985); Mayhue v. State, 969 S.W.2d 503, 510 (Tex. App.--Austin 1998, no pet.). The
representation need not be free of error. Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim.
App. 1984); Vasquez v. State, 819 S.W.2d 932, 938 (Tex. App.--Corpus Christi 1991, pet. ref'd). 
Finally, the client must show a reasonable probability that, but for counsel's errors, the result of
the proceedings would have been different. Id.

 The burden of showing counsel was ineffective is particularly difficult to carry
without some sort of evidentiary hearing dedicated to the issue of counsel's effectiveness. "In
most instances, the record on direct appeal is inadequate to develop an ineffective assistance
claim." Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997); see Oldham v. State,
977 S.W.2d 354, 363 (Tex. Crim. App. 1998); Jackson v. State, 973 S.W.2d 954, 957 (Tex.
Crim. App. 1998); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); (2) Ex parte
Duffy, 607 S.W.2d 507, 513 (Tex. Crim. App. 1980); Mayhue v. State, 969 S.W.2d at 511; see
also Osorio v. State, 994 S.W.2d 249, 253 (Tex. App.--Houston [14th Dist.] 1999, no pet.). The
court held in Duffy and reiterated in Oldham that, "where the alleged derelictions primarily are
errors of omission de hors the record rather than commission revealed in the trial record,
collateral attack may be the vehicle by which a thorough and detailed examination of alleged
ineffectiveness may be developed and spread upon a record." Duffy, 607 S.W.2d 513; see also
Oldham, 977 S.W.2d at 363. In the 1998 Jackson case, the court of criminal appeals reversed
the judgment that counsel was ineffective for failing to file a motion to suppress the only evidence
that defendant possessed cocaine; the court of criminal appeals held that defendant's claim failed
because he had not proved by a preponderance of the evidence that the cocaine should have been
suppressed. Jackson, 973 S.W.2d at 956-57. In the 1994 Jackson case, the court of criminal
appeals reversed the judgment that counsel was ineffective for failing to move to strike for cause
a jury panelist who said that a recent burglary of his home probably would affect his impartiality
in a robbery trial; the court of criminal appeals reversed because the record was silent regarding
defense counsel's reason for not moving to strike the panelist. Jackson, 877 S.W.2d at 771.

 Senteno complains most about counsel's failure to object to testimony given by
several witnesses that he contends was inadmissible as hearsay, speculation, or concerning
extraneous offenses:


 Ortegon's testimony that the informant told him that
"Pablo" had crack, and Ortegon's statements about items
that he believed were recovered in the apartment. 


 


 Bowers's testimony that Hester told him about Ortegon's
report of the informant's statement. 


 


 The police officers' testimony that the apartment manager
told them about who was staying in the apartment. 


 


 Hester's testimony that another officer told him Senteno
consented to a search of the apartment. 


 

 

Senteno also complains about the speculation or hearsay inherent in Hester's statements that
Senteno and Nanos came from apartment 207 to meet the police officers. (3) Senteno also complains
that Hester's statements that Nanos said Senteno had dealt drugs previously are both hearsay and
inadmissible evidence of extraneous offenses. There is no showing of why trial counsel sat
silently during this testimony.

 We conclude that the court of criminal appeals has proscribed courts of appeals
from finding counsel ineffective based on a record such as this. We do not know why defense
counsel did not object. We do not know what responses the State would have made. We do not
know how the district court would have ruled. We do not know what steps the State might have
taken had the testimony been barred. It is possible, as Senteno argues, that a sustained defense
objection to this testimony would have "[decimated], eviscerated, and virtually obliterated" the
State's case and that "there can be no rational claim of justification or strategy for counsel's
failing to object." It is also possible, however, that the larger context of the case led defense
counsel to decide that simply allowing the State to make its case with such testimony was
preferable to goading the State into getting other witnesses who could give more damaging
testimony. The silent record gives no guidance, and the court of criminal appeals instructs us not
to speculate about counsel's motives. See Jackson, 877 S.W.2d at 771; see also Jackson, 973
S.W.2d at 957. This, coupled with the presumption of competence, requires we overrule point
three.

 Our conclusion in this direct appeal that Senteno did not prove his counsel
ineffective does not bar Senteno from raising the issue in a petition for writ of habeas corpus. See
Ex parte Torres, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997).


CONCLUSION


 Because we have found that legally and factually sufficient evidence support the
judgment and that Senteno did not demonstrate that he received ineffective assistance of counsel,
we affirm the judgment of the district court. 



 
 

 Lee Yeakel, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: October 28, 1999

Do Not Publish
1. Factors that we can consider include whether: (1) the contraband was in plain view; (2) the
contraband was conveniently accessible to the accused; (3) the accused was the owner of the place
where the contraband was found; (4) the accused was the driver of the automobile in which the
contraband was found; (5) the contraband was found on the same side of the car seat as the
accused was sitting; (6) the place where the contraband was found was enclosed; (7) the strong
odor of marijuana was present; (8) paraphernalia to use the contraband was in view of or found
on the accused; (9) conduct by the accused indicated a consciousness of guilt; (10) the accused had
a special connection to the contraband; (11) occupants of the automobile gave conflicting
statements about relevant matters; (12) the physical condition of the accused indicated recent
consumption of the contraband found in the car; (13) traces of the contraband were found on the
accused; and (14) affirmative statements connect the accused to the contraband. Whitworth, 808
S.W.2d at 569.
2. The Jackson cases involve different defendants. Though both men's trials were in Harris
County district courts, the 1998 appellant was Demetrius Jackson and the 1994 case involved
Melvin Leon Jackson.
3. Hester testified that he called Nanos at "her apartment," that she had given him apartment
207 as her address, and that Senteno and Nanos "left the apartment together." Senteno contrasts
this unfavorably with Bowers's admission that, though he saw Nanos and Senteno leave the
complex together, he could not see from which apartment they emerged.



STYLE="font-family: CG Times Regular">S