**Rodolfo Bernal VASQUEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–90–311–CR.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 21, 1991.

Discretionary Review Refused
March 4, 1992.

E. Dale Robertson, Brownsville, for appellant.

Luis V. Saenz, Brownsville, for appellee.

Before DORSEY, KENNEDY and HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

A jury found appellant guilty of aggravated sexual assault, and the trial court assessed punishment at fifty years in prison. Appellant raises points of error complaining about counsel's performance, the admission of evidence, the prosecutor's jury argument, and the failure of the trial court to appoint an interpreter. We sustain one of appellant's jury-argument points, reverse the conviction, and remand the cause to the trial court.

The State alleged that in December 1985 appellant penetrated the sexual organ of a child with his finger. The child first cried out in May 1989. Appellant had been the child's mother's boyfriend and lived with the victim when the sexual assault allegedly occurred. Trial was held in May 1990, when the alleged victim was fifteen years old. The victim testified about several occasions when appellant penetrated her sexual organ with his finger.

By its first point of error, Vasquez complains that the trial court abused its discretion by failing to allow him to voir dire the State's expert witness, relying on Rule 705(b) of the Texas Rules of Criminal Evidence. He argues that he had a right to examine Jerry Amaya on voir dire outside the presence of the jury before he testified to ascertain the facts or data upon which he was basing his opinion. The trial court refused the voir dire after the prosecution stated that it would not ask Amaya for his opinion on this specific case, but intended to elicit opinions about sexual abuse generally.

Rule 705 speaks to the disclosure of facts or data which are the basis of the expert's opinion. Subsection (b) states: "Prior to the expert giving his opinion or disclosing the underlying facts or data, a party

against whom the opinion is offered shall, upon request, be permitted to conduct a voir dire examination directed to the underlying facts or data upon which the opinion is based. This examination shall be conducted out of the hearing of the jury." Tex.R.Crim.Evid. 705(b) (West 1986).

■ Rule 705 addresses the situation when the expert is testifying as to an opinion that is directly related to an issue at trial. It allows the party not calling the expert to explore the basis for the opinions without having the jury exposed to otherwise inadmissible data. *See Texas Rules of Evidence Handbook*, 20 Hous.L.Rev. 470–475; (Supp.1987); Goode, Wellborn & Shaarlot, *Texas Practice*, Vol. 33, 535–536. The official comment printed at the conclusion of Rule 705 states, "This rule does not preclude a party from conducting a voir dire examination into the qualifications of an expert." When an expert gives only general opinions not based on an analysis of the specific facts at issue, the voir dire allowed by Rule 705(b) is not implicated. The Rule deals with an alternative use for voir dire.

Amaya testified generally about sex offenders and about the manifestations of sexual abuse. He never directly related the data to an opinion about the case at trial. Amaya testified that he had worked with over 400 abused children and described the psychological effects of abuse on children in general, including poor performance in school, signs of depression, and the delay in actually telling someone, even the child's mother, about the abuse. Amaya testified about the effects of abuse on adolescents and gave his opinions about the coercion used by child abusers and about the fact that they tend to continue until they are stopped.

■ Because Amaya did not testify about the specific facts of this case, the need for a Rule 705(b) voir dire did not arise. The 705(b) voir dire should be used sparingly as its overuse would undermine the purpose of the rule: to quickly and efficiently elicit helpful expert opinions which aid the jury in its fact finding task. 3 Louisell & Mueller, *Federal Evidence*

§ 400 at 707 (1979). We hold that the trial court did not abuse its discretion by disallowing a voir dire authorized by Rule 705 outside the presence of the jury. We overrule point of error one.

By its second point of error, appellant argues that the testimony of the State's expert witness should have been excluded as irrelevant. However, we find that Jerry Amaya's testimony was in fact relevant and overrule point of error two.

Tex.R.Crim.Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ Vasquez claims that Jerry Amaya's expert testimony regarding sexually abused children and sex abusers in general is irrelevant to this case. However, Amaya's testimony goes directly to the credibility of the victim. He testified about sex abuser profiles and the manifestations and symptoms of sex abuse, leaving the trier of fact to interpret the testimony. An expert's general opinion regarding the ramifications of sexual abuse on children remains useful in discerning the complaining witness' credibility. *Kirkpatrick v. State*, 747 S.W.2d 833, 835 (Tex.App.—Dallas 1987, pet. ref'd).

In a child abuse case such as this one, where the child waited some five years to report the alleged assault, the credibility of the child is a fact directly at issue. Therefore, Amaya's testimony regarding symptoms of child abuse victims in general, including the frequent existence of the delayed outcry, tends to make the existence of a fact of consequence to the determination of the action more probable: that is, that the victim is telling the truth. *Kirkpatrick*, 747 S.W.2d at 835–836.

We overrule points of error one and two.

In point three, appellant complains that the trial court erred when it overruled his objection to the prosecutor's argument:

Well, I would be terrorized if I was a 9 year old little girl and a man would beat

my mother up in front of me, beat her so badly it would make her bleed.

The evidence showed that appellant and the victim's mother had a stormy relationship. At times appellant would hit the mother in the victim's presence. The victim, when asked why she did not speak out about the sexual abuse earlier, testified that she was afraid of appellant and that appellant threatened to hurt her mother if she told anyone.

It is improper for a prosecutor to inject his personal opinion into statements to the jury. *Johnson v. State*, 698 S.W.2d 154, 167 (Tex.Crim.App.1985). However, the gist of the prosecutor's argument was that the victim had a legitimate reason to fear the appellant and believe that he would carry out his threats. The better practice is not to use first person pronouns or to refer to oneself in jury arguments. Appellant's third point of error is overruled.

In point four, appellant contends that the trial court erred when it overruled his objection that the prosecutor was invading the province of the jury when he stated:

"I want you to know that I sincerely believe [the victim]. Five meetings were not improper, five meetings were for me, in my opinion, meetings—(objection and adverse ruling) And I do believe her, and I hope you do too. That's why I talked to her five times."

It is within the jury's province, not the prosecutor's, to judge the credibility of the witnesses. *Flores v. State*, 778 S.W.2d 526, 528–529 (Tex.App.—Corpus Christi 1989, no pet.). It is error to argue that the jury should believe a witness simply because the prosecutor does. *See Gardner v. State*, 730 S.W.2d 675, 698 (Tex.Crim.App.1987); *Robillard v. State*, 641 S.W.2d 910, 912 (Tex.Crim.App.1982). Such argument constitutes bolstering of the witness' credibility through unsworn testimony. *Menefee v. State*, 614 S.W.2d 167, 168 (Tex.Crim.App.1980).

Here the prosecutor attempted to bolster the victim's credibility by vouching for her. The trial court erred by overruling the objection and permitting the prosecutor to continue the argument.

We must next determine if that error requires reversal. *Orona v. State*, 791 S.W.2d 125, 128–130 (Tex.Cr.App.1990); *Griffin v. State*, 779 S.W.2d 431, 433–34 (Tex.Cr.App.1989). The offense allegedly occurred when the victim was eight or nine. The victim was fifteen years old at the time of trial. She testified that during the time appellant lived with her mother, appellant would use his finger to penetrate her sexual organ. When she first told an adult what had occurred, about three years after the alleged assault, a medical examination was conducted, and it revealed that her hymen was broken and that the break was not recent. The testifying doctor could not establish when or how the break had occurred. Appellant testified and denied ever sexually assaulting the victim.

Although the results of the physical examination may have circumstantially added credibility to the victim's allegations, the case essentially matched appellant's credibility against the victim's, and there was some suggestion (through appellant's questioning or testimony) that the child's accusations were designed to keep him away from her mother, to get back at him for hitting her mother, or to divert attention from her own truancy problems. Thus, appellant cast some doubt on the victim's credibility, and the prosecutor's vouching may have been a factor in the jury's decision to believe her.

The victim's testimony was the critical part of the State's case and her credibility was crucial. We cannot say beyond a reasonable doubt that the prosecutor's improper vouching for the victim had no effect on the jury's decision. Appellant's fourth point of error is sustained.

In point five, appellant contends that the prosecutor committed reversible error when he stated:

"A man that would threaten to kill somebody. I hope you don't let him walk out of here today and get on the elevator with you and I, I really don't. It scares me, yes, I am afraid, you bet I am."

Appellant did not object to this argument. The failure to object to improper jury argument waives any error, except when the argument is so egregious that no instruction to disregard could possibly cure it. *Willis v. State,* 785 S.W.2d 378, 385 (Tex. Crim.App.1989). This argument could have been cured by a prompt instruction to disregard. Appellant waived error by not objecting. Appellant's fifth point is overruled.

In point six, appellant contends that the trial court erred by failing to *sua sponte* appoint an interpreter to translate the proceedings. At no time during trial did appellant request an interpreter or object to not having an interpreter present. *See* Tex.Code Crim.Proc.Ann. art. 38.30 (Vernon Supp.1991). Appellant first complained about the lack of an interpreter in his motion for new trial. At a hearing on the motion, the State stipulated that appellant did not speak English.

▇▇▇ The right to have trial proceedings interpreted to the accused in a language he can understand is a part of the constitutional right to confrontation. *Baltierra v. State,* 586 S.W.2d 553, 558 (Tex. Crim.App.1979). Nonetheless, an accused waives his right to complain about the lack of an interpreter when he does not object or file a motion for an interpreter, unless the trial court is aware that the defendant needs an interpreter. *See Id.* In *Baltierra,* the defendant was a nineteen year old Mexican national from the interior who did not speak or understand English; the trial court was aware of the defendant's inabilities, but no objection was made to proceeding without an interpreter. In reversing the conviction, the Court of Criminal Appeals placed the onus upon the trial court to inquire whether the accused's rights would be safeguarded in the absence of an interpreter when the ability of the defendant to speak and understand English is raised to some extent. *Baltierra,* 586 S.W.2d at 558–59. Because appellant did not object, we must determine whether there were circumstances to show that the trial court should have inquired into the matter on its own.

▇▇▇ The record shows that at the time the prosecutor read the indictment to appellant, the trial court stated, "Would the defendant please rise? And he will need to have this interpreted." Thereafter, an official court interpreter was used to translate the indictment and the testimony of one prosecution witness, and four defense witnesses, including the appellant's own testimony. The testimony of seven prosecution witnesses was not translated. It thus appears that with respect to the witnesses, the translator was present to translate the Spanish speaking witnesses' testimony into English for the jury's benefit rather than to translate the English speaking witnesses' testimony into Spanish for the appellant's benefit. The trial court's use of an interpreter for appellant's benefit was limited to translating the State's accusation.

Appellant was a middle-aged man who apparently had been in the Brownsville area for some time, as the offense allegedly occurred in 1985. Appellant, represented by counsel, did not request an interpreter before trial in accordance with article 38.30 of the Code of Criminal Procedure or object during trial to proceeding without an interpreter. The only circumstance shown by the record which would indicate some knowledge that the trial court was aware of appellant's inability to speak English is the trial court's comment that the indictment would have to be translated. From that circumstance alone, however, we cannot find that the trial court should have inquired into appellant's ability to understand English. The trial court may have been merely exercising caution to have the accusation read in both English and Spanish, as the reading of the indictment and the defendant's plea joins the issue between the State and the defendant.

Our review of the record shows that at the sentencing phase of trial, the trial court spoke to appellant in English, and appellant twice responded to the trial court's admonitions by saying, "Yes." Although the State stipulated that appellant did not speak English, appellant may have understood English and that his right to confrontation was not infringed. In the absence of

facts to show that appellant could not understand English, we find no error and overrule his sixth point of error.

In point of error seven, appellant contends that he did not receive the effective assistance of counsel. The benchmark for judging any claim of ineffectiveness is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on to have produced a just result. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim.App.1990). A defendant seeking relief must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 54–59 (Tex. Crim.App.1986); *Welborn*, 785 S.W.2d at 393. The prejudice prong requires that the defendant show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Appellant argues that counsel was deficient in 1) not requesting an interpreter, 2) not objecting to the jury argument addressed in point of error five, 3) making the wrong objection to the jury argument addressed in point four, and 4) "injecting a collateral matter in the sentencing hearing."

Whether counsel was deficient in not requesting an interpreter turns on whether appellant was capable to understand the proceedings. As we held above, appellant did not show that he was unable of understanding the proceedings. Without this showing, we cannot find that counsel was ineffective.

With respect to the jury argument objections, we find that appellant's contentions are without merit. We sustained one point of error complaining of improper jury argument. Counsel was effective in preserving reversible error. Although counsel could have objected to the

other argument, we regard this as an isolated failure to object which did not render counsel's performance ineffective. Whether counsel provides a defendant adequate assistance is to be judged by the totality of the representation rather than by isolated acts or omissions. *Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986). Counsel ably represented appellant throughout the course of the trial, despite this failure to object.

Appellant next complains that counsel injected "collateral matters into the sentencing" hearing. During the guilt phase of trial, appellant was represented by the Honorable Noe D. Garza. At the beginning of the punishment hearing, the Honorable Dale Robertson was designated as lead counsel. Robertson argued for the minimum sentence of five years. Garza, who was still representing appellant, reported to the trial court that appellant was complaining that he had not been informed of his ineligibility for probation if he elected, as he did, to have the trial court assess punishment. Garza told the trial court, contrary to appellant's claim, that he had informed appellant of this fact.

Appellant contends on appeal that counsel was ineffective for putting him in a bad light immediately before having punishment assessed. We disagree. Counsel's statement to the trial court raises a question of whether appellant was correctly informed of his options or whether he misunderstood the effect of his choice. Even though the matter was collateral to the punishment issues, we cannot find that appellant was prejudiced by counsel's statement.

Having reviewed the entire record, we conclude that appellant was not denied the effective assistance of counsel. Appellant's seventh point of error is overruled.

Because we sustained appellant's fourth point of error, the judgment of the trial court is reversed and the cause is remanded to the trial court.