cr5-337.dd.defreeze 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00337-CR







Joe Defreeze, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0944522, HONORABLE JON N. WISSER, JUDGE PRESIDING







 A jury convicted Joe Defreeze of aggravated robbery. See Tex. Penal Code Ann.
§ 29.03 (West 1994). The court assessed his punishment, enhanced by a prior felony, at twenty-eight years in prison. By eight points of error, Defreeze complains that his confession should
have been suppressed and that his counsel was ineffective. We will affirm the judgment.

 Defreeze was convicted of robbing a pizza deliveryman at knife point. The
evidence included Defreeze's confession, which he recanted on the stand. In his confession,
Defreeze stated that he and Percy Green performed the robbery under the direction of a third man,
who turned out to be Todd Carruth. Defreeze stated that they were high on "dope" and bought
more dope after the robbery; Carruth testified that crack cocaine was the drug used.

 By his first three points of error, Defreeze contends the trial court erred by denying
his motion to suppress his extra-judicial confession. He argues that the confession was obtained
in violation of the fifth and fourteenth amendments to the federal constitution (point one), Texas
Code of Criminal Procedure article 38.22 (point two), and state constitution article I, sections 10
and 19 (point three). We must first decide whether the record supports the trial court's findings
of fact, then whether the court properly applied the law to those findings. Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). The entire record is subject to review. Peacock v.
State, 819 S.W.2d 233, 235 (Tex. App.--Austin 1991, no pet.). The trial judge is the sole trier
of fact and judge of the credibility of witnesses. Romero, 800 S.W.2d at 543. We will reverse
only for an abuse of discretion. Sosa v. State, 769 S.W.2d 909, 915 (Tex. Crim. App. 1989);
Peacock, 819 S.W.2d at 235.

 The trial court made findings of fact regarding Defreeze's confession, including the
following: Sgt. Bruce Lutringer orally advised Defreeze of his constitutional rights regarding the
interrogation. Lutringer also let Defreeze read the card listing his rights and initial the relevant
paragraphs to acknowledge his understanding. Defreeze initialed paragraphs on his statement to
acknowledge that Lutringer informed him of his right to remain silent and that any statement could
be used against him in court, that he had the right to have counsel appointed and present before
and during questioning, and that he could stop the interview at any time. Defreeze waived these
rights in the statement. No promise of a benefit was made to the defendant in exchange for the
statement. Defreeze's testimony that Lutringer told him numerous cases would be filed against
him if he refused to confess was not credible. Defreeze's confession was oral and reduced to
writing. He did not make any corrections after reviewing the statement.

 In his federal constitutional claim, Defreeze attacks as clearly erroneous the
findings that the police did not promise him a benefit from confessing and that he knowingly,
intelligently, and voluntarily waived his Miranda rights. See Miranda v. Arizona, 384 U.S. 436
(1966). He contends promises were made to him that rendered his waiver of rights involuntary.
Confessions are inadmissible unless they are freely and voluntarily given. Zuliani v. State, 903
S.W.2d 812, 820 (Tex. App.--Austin 1995, pet. ref'd). We look at the totality of the
circumstances to determine voluntariness. Id. at 821. The testimony conflicted.

 Defreeze testified that, when he was being questioned, he initially denied
knowledge of the robberies. He began to reconsider his denial when one of the officers threatened
that, if Defreeze continued to deny knowledge, the police would show his picture to victims of
other crimes and imprison him for a long time. He said that Lutringer told him that, if he
confessed to two crimes, the police would charge him with only those two and let the district
attorney know that he had cooperated. Defreeze admitted that the police never guaranteed that
he would receive a particular sentence or that the district attorney would file only two charges
against him. He later testified that he gave his statement out of fear because the police told him
his friends had already implicated him in several robberies. Defreeze requests consideration of
the additional circumstances that he has only a fair understanding of English, that he was a crack
user, and that he confessed prior to being taken before a magistrate.

 Lutringer testified that he read Defreeze his Miranda rights at the outset of the
questioning. He said he told Defreeze that the victim had picked Defreeze out of a photo lineup
and that this was Defreeze's chance to get his side of the story down. Lutringer flatly denied
promising that Defreeze's confession would limit the prosecution to two cases. Lutringer admitted
that he told Defreeze that the district attorney would be told of any cooperation and would decide
whether to prosecute him for other crimes. Lutringer acknowledged that, at some point, the
officers probably told Defreeze that, if he did not talk about his involvement in the robberies, 
they would contact the victims of all the robberies and show his picture in a photo lineup. 
Lutringer testified, however, that they did not discuss other robberies until after Defreeze signed
the confession. Lutringer also testified that Defreeze did not appear to be under the influence of
any mind- or mood-altering substances when he confessed.

 We see no error in the challenged findings. Defreeze admitted he was not promised
a particular sentence or limitation of charges filed against him. Telling Defreeze that the
questioning offered him the chance to get his story told promised no benefit. First, there was no
promise; second, the police did not know whether Defreeze's story was beneficial--clearly, the
confession was at least in part harmful to him because he admitted committing the instant offenses. 
The police also told him that the decision whether to prosecute the other offenses was beyond their
control. We find no support for Defreeze's intimation that the voluntariness of his confession was
in any way tainted by a limited comprehension of English, addiction to crack, or lack of
admonishment by a magistrate during his overnight stay in jail before his confession. Because
evidence supports the court's findings, we do not find a clear abuse of discretion. We overrule
point one.

 Defreeze complains in point of error two that the police did not comply with article
38.22. As we just concluded, the court acted within its discretion in determining that the police
did not wrongfully induce his confession by making promises or render the confession
involuntary. See Dinkins v. State, 894 S.W.2d 330, 349 (Tex. Crim. App. 1995). Defreeze
further complains that his written statement lacks a recital that, before and during the making of
the statement, he knowingly, intelligently, and voluntarily waived certain rights. See Tex. Code
Crim. Proc. Ann. art. 38.22, § 2 (West 1979). The warnings must be given in "strict
compliance" with the statute. Dunn v. State, 721 S.W.2d 325, 341 (Tex. Crim. App. 1986). 
Strict compliance does not require transcription of the statute; the language can be slightly
different if it conveys the exact meaning of the statute. See Sosa v. State, 769 S.W.2d at 915-16.
The warning card Defreeze initialed stated that his statement could be used as evidence against
him at trial; the omission of the words "as evidence" from the recitation in his confession does
not change the meaning of the warning enough to alter the message. Further, the statute does not
require that the statement contain a clause stating that the accused waived his rights prior to and
during the making of the statement, only that the statement show that the waiver was made
properly prior to and during the making of the statement. At the beginning of the statement,
Defreeze averred that he was warned of the relevant rights "before making the following
statement" and that he understood and waived his rights "without any threats or promises of any
kind having been made to me." At the conclusion of the statement he reasserted that he gave the
statement freely and voluntarily with no threats or promises made. We conclude that these
averments and their placement show on the face of the statement a knowing, intelligent, and
voluntary waiver of rights before and during the making of the statement. We overrule point two.

 Defreeze contends by point of error three that the officer's promises rendered the
confession involuntary under the state constitution. The test for whether a promise of benefit
renders a confession involuntary has four parts. "The promise must be: 1) of some benefit to the
defendant, 2) positive, 3) made or sanctioned by a person in authority, and 4) of such character
as would be likely to influence the defendant to speak untruthfully." Sossamon v. State, 816
S.W.2d 340, 345 (Tex. Crim. App. 1991). We reach the same result under this analysis as in
points one and two and overrule point three. 

 The five remaining points of error relate to the appointment, failure to withdraw,
and performance of counsel. By points of error four through seven, Defreeze contends his trial
counsel was ineffective. By his last point of error, he contends the court erred by not giving his
second attorney time to prepare before trial.

 In analyzing a claim of ineffective assistance of counsel, we must first examine
whether counsel's conduct failed to meet an objective standard for reasonable performance and
whether that failure deprived defendant of a fair trial. See Strickland v. Washington, 466 U.S.
668, 687, (1984); Ex parte Walker, 777 S.W.2d 427, 430 (Tex. Crim. App. 1989). We look at
the totality of the representation. Ex parte Carillo, 687 S.W.2d 320, 324 (Tex. Crim. App.
1985); Vasquez v. State, 819 S.W.2d 932, 938 (Tex. App.--Corpus Christi 1991, pet. ref'd). 
Counsel is allowed wide latitude within reasonable professional standards to make tactical
decisions. Strickland, 466 U.S. at 689. The representation need not be error-free. Ingham v.
State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984); Vasquez, 819 S.W.2d at 938. Finally, the
appellant must show a reasonable probability that, but for counsel's errors, the result of the
proceedings would have been different. Id.

 Defreeze contends he received ineffective assistance of counsel because Walter
Prentice, his original appointed counsel, failed to move to withdraw long enough before the trial
to permit a substitute attorney sufficient preparation time. Prentice was appointed to represent
Defreeze on September 26, 1994. On February 10, 1995, Defreeze refused to testify against his
friend Green, even after being granted immunity and being held in contempt for his refusal. Two
weeks later, after a heated discussion of trial strategy with Prentice on Friday, February 24,
Defreeze told Prentice he was fired. On the following Monday, when trial was set to begin,
Prentice filed a motion to withdraw as counsel. He stated that, if Defreeze chose to testify,
Prentice would likely face an ethical dilemma that would render him unable to conduct the
examination. Defreeze stated at the pretrial hearing that he wanted Prentice to withdraw because
Prentice had not talked with him about the case without becoming heated or cursing. The trial
court declined to allow withdrawal so near to trial, noting that Prentice was a criminal law expert
and familiar with the case. The court instead appointed an additional criminal lawyer, Mark
Westenhover, who did not arrive until after voir dire began.

 After Green testified at Defreeze's trial and denied committing the robbery,
Defreeze wanted to testify. Prentice stated on the record outside the presence of the jury that he
had advised Defreeze of his right to choose whether to testify and that he advised Defreeze not
to testify, in large part because his testimony would allow the State to inquire into his criminal
record and other charges pending against him. After an off-the-record discussion, Prentice
announced that Defreeze would testify and be questioned by Westenhover.

 Defreeze asserts that Prentice should have known on February 10 when Defreeze
refused to testify against Green, that Defreeze would want to testify at his own trial. He contends
that this knowledge should have spurred Prentice's motion to withdraw. We do not find a basis
for this contention in the record. Even if Prentice disagreed with Defreeze's decision to reject the
plea bargain and refuse to testify, the record does not show that Prentice would be unable to
represent him. It does not show that Prentice should have known that Defreeze intended to testify
at his own trial. Indeed, Defreeze's refusal to testify in Green's trial, though inconsistent with
the plea bargain offer, seems consistent with Prentice's recommendation that Defreeze not testify
in his own trial. The stated and apparent triggering event for the motion to withdraw was
Defreeze's discharge of Prentice; Prentice filed the motion to withdraw on the next business day. 
The record does not show that Prentice withdrew too late.

 Defreeze next argues that his counsel's unfamiliarity with the facts and governing
law caused him not to elicit testimony from Defreeze regarding his assertion that the police made
illegal promises of favorable treatment to obtain his confession. Though he blames Prentice for
Westenhover's ignorance due to his late entrance into the case, this claim can lie against
Westenhover alone because Prentice did not participate in Defreeze's examination. Defreeze also
contends that counsel was ineffective for failing to request a proper jury instruction on the use of
the confession.

 The record does not show why Westenhover did not inquire about the alleged
illegal promises. Defreeze suggests that Westenhover was daunted by the State's hearsay
objections and lacked the expertise to circumvent those objections. Westenhover instead may have
chosen to avoid eliciting testimony that would show Defreeze to be someone who lied, not just
when scared, but when promised benefits. Such a choice would be a reasonable trial strategy to
minimize the damage to Defreeze's credibility from admitting that he lied in a sworn statement
to police. The record does not support Defreeze's claim. (1)

 The complaint regarding the lack of an instruction fails as well. The court
instructed the jury as follows: 


 You are instructed that under our law a statement of a defendant
made while under arrest or in custody, may not be used in evidence
against the defendant unless it appears that the statement was freely
and voluntarily made without compulsion or persuasion.

 Now, therefore, if you find from the evidence, or if you
have a reasonable doubt thereof, that at the time of the making of
the statement, if any, to the police investigators, the defendant was
coerced or forced to make the statement by threats from the police
which were sufficient to render his statement, if any, not voluntary,
you will completely disregard such statement as evidence for any
purpose nor will you consider any evidence obtained as a result
thereof.


Defreeze does not suggest what alternate instruction counsel should have requested. He has not
shown the deficiency in counsel's performance on this issue.

 Defreeze also complains that counsel was ineffective for failing to object to or
otherwise seek exclusion of evidence of extraneous bad acts. Defreeze said in his confession that
he and Green took the money from the pizza delivery man and "went and bought some dope." 
Carruth was more explicit. He testified that he planned the robbery as part of a string of
robberies committed in order to obtain money to smoke crack. Defreeze contends that counsel
should have objected to evidence regarding drug use because of the negative impact on the jury. 
He argues further that Carruth's corroboration of his statements about drug use lent credibility to
other aspects of his confession. He argues that the drug evidence was inadmissible because it was
not necessary to the jury's evaluation of the robbery offense. See Rogers v. State, 853 S.W.2d 29,
34 (Tex. Crim. App. 1993) (possession of marijuana not admissible to prove possession of
methamphetamine or burglary).

 The bad acts in this case were admissible to show motive. See Tex. R. Crim. Evid.
404(b). The testimony in this case shows a direct motivational link between the robbery and the
drug use; this case is therefore distinct from Rogers and the cases cited therein. See Knox v.
State, 934 S.W.2d 678, 682-83 (Tex. Crim. App. 1996). The failure to seek exclusion might also
have been a strategic attempt to elicit sympathy by showing that the drugs rendered Defreeze not
responsible for his actions. The State did not emphasize the drug consumption in its use of the
statement. Defreeze's counsel was not ineffective for failing to object to evidence that likely was
admissible.

 Defreeze's representation was otherwise not ineffective. Prentice filed several
pretrial discovery motions and the motion to suppress the confession. Prentice participated at the
hearing on the motion to suppress and at voir dire, making challenges for cause and peremptory
strikes, without objection by Defreeze. Prentice called and cross-examined witnesses at trial. 
Even as he was stepping aside from examining Defreeze, he participated by asserting that a prior
conviction was on appeal and not admissible. He attempted to discredit Carruth by showing that
his testimony was in exchange for an agreement by the district attorney's office not to challenge
his parole application. In closing argument, Prentice carefully challenged the pizza delivery man's
testimony as honest but shaky. He also challenged the confession's free and voluntary nature and
encouraged the jury to disregard it. He emphasized Carruth's agreement with the State. He
finally urged the jury that, if they convicted Defreeze, they convict him only of robbery rather
than aggravated robbery. We conclude that Defreeze has not shown that his counsel's
representation fell below an objectively reasonable standard. We overrule points four, five, six,
and seven.

 Defreeze urges by his eighth point of error that the trial court committed
fundamental error by not giving Westenhover ten days after his appointment to prepare for the
trial. See Tex. Code Crim. Proc. Ann. art. 1.051(e) (West Supp. 1997). A trial court need not
allow an additional appointed counsel ten days to prepare if the chief and continuing appointed
counsel has had ten days to prepare. Marin v. State, 891 S.W.2d 267, 271 (Tex. Crim. App.
1994). Defreeze argues that, because Prentice said he could not examine Defreeze when he
testified, we should regard Westenhover as sole counsel for the purposes of questioning him. He
argues that the lack of preparation time would then be fatal to the conviction. See id. at 272.

 When making the appointment, the trial court knew that Westenhover likely would
only examine Defreeze if he chose to testify. The trial met that expectation. No one sought a
continuance. Westenhover examined Defreeze with a day's preparation. As noted, Prentice did
not completely disengage from the trial when Defreeze took the stand. We conclude that, under
the circumstances, the trial court did not commit fundamental error by not, on its own motion,
giving Westenhover ten days to prepare. We overrule point of error eight.

 Having overruled all points of error, we affirm the judgment of conviction.



 

 J. Woodfin Jones, Justice 

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: February 27, 1997

Do Not Publish
1. Defreeze also complains that Westenhover showed his ignorance of the case by stating
that he did not know of any other statements. Defreeze urges that Westenhover meant that he did
not know of the police promises. In context, the statement appears to refer to other statements
by Defreeze to police. At any rate, the ambiguity prevents Defreeze from meeting the Strickland
standard.



he drug evidence was inadmissible because it was
not necessary to the jury's evaluation of the robbery offense. See Rogers v. State, 853 S.W.2d 29,
34 (Tex. Crim. App. 1993) (possession of marijuana not admissible to prove possession of
methamphetamine or burglary).

 The bad acts in this case were admissible to show motive. See Tex. R. Crim. Evid.
404(b). The testimony in this case shows a direct motivational link between the robbery and the
drug use; this case is therefore distinct fr